Eric WILLIAMS, Petitioner,

v.

John MARSHALL, Respondent.

Civil Action No. 05–12426–WGY.

United States District Court,
D. Massachusetts.

Jan. 11, 2007.

Anne E. Gowen, Princeton Junction, NJ,
David J. Nathanson, Committee for Public

Counsel Services, Boston, MA, for Petitioner.

Maura D. McLaughlin, Office of the Attorney General, Boston, MA, for Respondent.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

## I. INTRODUCTION

Petitioner Eric Williams ("Williams") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Williams was convicted of multiple offenses in the Massachusetts Superior Court, sitting in and for the County of Plymouth, Justice Patrick Brady presiding. At trial, a redacted version of a letter allegedly authored by Williams as a pre-trial detainee was admitted in evidence. Williams asserts that the admission of this evidence, as well as the manner of its use by the prosecution, violated his federal due process rights.

## II. FACTUAL[1] AND PROCEDURAL HISTORY

On September 27, 1999, a Plymouth County grand jury indicted Williams on numerous counts, and his trial was scheduled to begin on December 14, 2000. Pet'r Mem. of Law and Appendix in Support of Pet. for Writ of Habeas Corpus [Doc. No. 12] ("Pet'r Mem.") at 3; Resp. Mem. of Law in Opp. to Pet'r Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Doc. No. 20] ("Resp.Mem.") at 1–2.

The relevant factual background of Williams' collateral attack is summarized by the Massachusetts Appellate Court as follows, and this Court need not expand on it:

This case involves a series of incidents that took place in the Bartlett and Main Street areas of Brockton on the evening of August 9, 1999, that began with verbal exchanges between an occupant of [Williams'] motor vehicle and a woman standing among a group of women near the vehicle. On the evidence presented by the Commonwealth, the jury could have found that during this altercation, which extended over the course of the evening, [Williams] punched and struck Burnell with a gun and discharged a weapon into a populated area of Brockton. [Williams] countered with a twofold theory of defense, that is, he acted in defense of another and, in respect to the charges concerning the possession and use of a firearm, misidentification.

*Commonwealth v. Williams,* 63 Mass.App. Ct. 1112, 825 N.E.2d 1080, 2005 WL 955049, at *1 (Mass.App.Ct.2005).

Williams filed a motion in limine to exclude a letter he purportedly wrote while incarcerated and awaiting trial, as well as any corroborative testimony by the corrections officer who seized it at the facility where Williams was held. *Id.* at *1 n. 2; Resp. Mem. at 2. The Commonwealth filed its own motion in limine in favor of admitting the evidence. Resp. Mem. at 2. Justice Brady ruled both the letter and testimony admissible, with certain restrictions as to content and form. *Id.;* Trial Tr. 2:85–86.

Williams was tried by jury and convicted of assault and battery on Linda Burnell, assault and battery with a dangerous weapon on Linda Burnell, unlawful possession of a handgun, and unlawful discharge of a firearm within five hundred feet of a dwelling. *Williams,* 2005 WL 955049, at *1. Williams was acquitted of armed assault on an unknown male and of assault and battery on Tiffany Clark. Pet'r Mem. at 4; Resp. Mem. at 2. On the indictment charging assault and battery with a dan-

---

1. This description of the facts is based on the findings of the state courts, which are presumed correct for the purposes of a habeas corpus inquiry. *See* 28 U.S.C. § 2254(e)(1).

gerous weapon, Williams was sentenced to nine to ten years in state prison. Pet'r Mem. at 5; Resp. Mem. at 2–3. The indictments charging assault and battery and unlawful discharge of a firearm were placed on file with Williams' consent. Pet'r Mem. at 5. A bench trial was then conducted on the indictment charging unlawful possession of a firearm by a person previously convicted of a violent crime or drug offense in violation of Massachusetts General Laws chapter 269, section 10G(b). Pet'r Mem. at 4; Resp. Mem. at 3. Williams was convicted and received a term from ten years to ten years and a day. This sentence was to be served concurrently with the prior nine to ten year sentence. Pet'r Mem. at 4–5; Resp. Mem. at 2–3.

Williams timely filed a notice of appeal. Pet'r Mem. at 5; Resp. Mem. at 3. He then filed a motion for a new trial claiming, in part, that the admission of the letter and the corroborating testimony of the corrections officer who seized the letter violated his right to a fair trial. *Williams*, 2005 WL 955049, at *2. Justice Brady denied the motion without a hearing. Mem. and Order on Def.'s Mot. for a New Trial, Supp. Ans., Ex. 4 ("New Trial Mem.") at 1. Williams then filed a notice of appeal from the denial of the new trial motion. Brief and R.App. for the Def. on Appeal, Supp. Ans., Ex. 5, at 1–2.

The Massachusetts Appeals Court affirmed Williams' conviction and the denial of his motion for a new trial in an unpublished opinion. *Williams*, 2005 WL 955049, at *1. Williams filed an application for further appellate review ("ALOFAR") with the Supreme Judicial Court of Massachusetts, which was denied. Pet'r Mem. at 6; *Commonwealth v. Williams*, 444 Mass. 1107, 831 N.E.2d 1293 (2005) (table decision).

## III. DISCUSSION

### A. Standard for Review

■ When a person is in custody pursuant to the judgment of a state court, a federal court may consider an application for habeas corpus only on grounds that the person is held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may grant relief to a habeas petitioner only if the state court proceeding:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

*Id.* at § 2254(d); *Rashad v. Walsh*, 300 F.3d 27, 34 (1st Cir.2002). If, however, the habeas petition presents a federal claim that was raised before a state court but left unconsidered or unresolved, federal courts are to conduct de novo review. *Lynch v. Ficco*, 438 F.3d 35, 44 (1st Cir. 2006); *Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir.2001).

Williams argues that he is entitled to de novo review because the state courts did not address his federal constitutional claim. *See* Pet'r Mem. at 22–24. Specifically, Williams asserts that he raised the federal claim of a due process violation in his motion for a new trial before the trial court, in his appeal of conviction before the Massachusetts Appeals Court, and in his ALOFAR before the Supreme Judicial Court, but that none of the state courts considered his argument. *See id.*

In response, respondent argues that the test applied at trial and on appeal by the state courts to Williams' claim of prejudice was more favorable to him than the cog-

nate standard for federal habeas review of a due process claim arising from the alleged erroneous admission of evidence. Resp. Mem at 8. As a result, respondent asserts that this Court ought apply the first prong of the more deferential standard found in 28 U.S.C. § 2254(d)(1), upholding the state court's decision unless it constitutes an unreasonable application of federal law as determined by the Supreme Court. *Id.*

There is scant evidence of how seriously and deeply the Massachusetts Appeals Court considered Williams' claim of a *federal* due process violation resulting from the evidentiary ruling of the justice of the Superior Court. The Appeals Court explicitly referred to Williams' federal claim only once:

> In his motion for new trial, the defendant alleged for the first time that his rights under the Federal and State Constitutions had been violated.
>
> . . .
>
> Based upon the testimony of the correction officer in charge of monitoring mail and the law, we see no abuse of discretion, or other error of law in the judge's determination that there was no basis for excluding the letter from evidence on the ground that it should not have been opened by correction officials.

*Williams,* 2005 WL 955049, at *2 (citations omitted). Under the section of the opinion entitled "b. Relevance of the letter," there is no reference to federal law at all. *See id.* Instead, the Appeals Court summarily dismissed Williams' claims:

> Further, we see no merit to [Williams'] claims that the letter was inadmissible in that its contents portrayed him in a poor light, suggested an additional uncharged crime, and were unduly exacerbated by the prosecutor's use of a blow-up copy of the letter during closing argument.

*Id.* (internal citations omitted). The Appeals Court therefore concluded that the letter was "properly admitted in evidence." *Id.* at *3. The Supreme Judicial Court subsequently denied Williams' ALOFAR without explanation. *Williams,* 444 Mass. 1107, 831 N.E.2d 1293.

Williams states, however, that "[t]he state and federal standards differ only by degree: under state law, the court erred in admitting the letter if its prejudicial impact outweighed its probative value; under federal law, due process was violated if the letter so infused the trial with inflammatory prejudice as to make a fair trial impossible." Pet'r Mem. at 26. Williams further states that "[t]horoughly addressing each inquiry separately would lead to substantial redundancy." *Id.* at 27. This Court will follow Williams' lead and assume for present purposes that the state evidentiary standard and federal due process standard are the same. On the basis of this assumption, the Massachusetts Appeals Court necessarily found that there was no federal due process violation when holding that the probative value of the letter outweighed its prejudicial impact under the state evidentiary standard. Cf. *McCambridge v. Hall,* 303 F.3d 24, 35 (1st Cir.2002) ("If there is a federal or state case that explicitly says that the state adheres to a standard that is more favorable to defendants than the federal standard . . . we will presume the federal law adjudication to be subsumed within the state law adjudication."). In light of the foregoing, this Court will apply the AEDPA standard set forth in 28 U.S.C. § 2254(d)(1).

## IV. DUE PROCESS ANALYSIS

When federal courts are called upon to review a petition of habeas corpus, it is a well-settled principle that errors of state law do not provide adequate basis for the granting of such relief. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("Today we

reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Therefore, federal courts conduct habeas review of an alleged trial error only to determine whether it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). This Court will therefore not review the rulings on state evidentiary law.

■ This Court finds persuasive, however, Justice Brady's searching analysis of the evidentiary issue, which is a veritable template of a careful evidentiary ruling. Although Justice Brady did not explicitly perform a federal due process analysis, this Court finds his reasoning fully convincing in its application in that context and accordingly adopts his reasoning in full under the rubric of federal due process analysis.

At the pretrial hearing, Justice Brady held:

I rule that the letter is admissible. There are sufficient self authenticating facts in the letter which I think have been identified in the course of the hearing which point specifically to Eric Williams. It is very probative. It may not be an admission that he committed the crime, but it does show what I would describe as a consciousness of guilt in that he appears to be asking the recipient to take some action to minimize the risk that the witness Tanya Ross is going to testify against him. Although it may not be an admission that he committed the crime, but it does suggest that he is taking some steps to keep evidence

from the jury and that I suggest could be taken as consciousness of guilt. So it is very relevant.

The circumstances of the return address are also something that point to Eric Williams as the author and finally the handwriting the printing examples from Eric Williams's file which is evidence that Eric Williams wrote these particular complaints concerning his disciplinary hearing. The printing is similar and provides me at least with sufficient satisfaction that the letter is authentic.

Trial Tr. 2:85–86.

Then, upon further reflection in the New Trial Memorandum, Justice Brady wrote:

While in jail pending trial, [Williams] wrote a letter to a friend largely phrased in street jargon asking him to intimidate an expected prosecution witness, Tanya Ross, who identified him fleeing from the scene with a gun. Ross was an elementary school classmate of [Williams] and an important witness for the Commonwealth. [Williams'] letter left the jail unopened, but was returned to the facility because the addressee was unknown. The jail authorities treated the return letter as incoming mail, and opened it because of safety concerns due to a "gang" symbol. ([Williams] was a known gang member.) The letter was the subject of a motion in limine.... I was satisfied that there was no unlawful seizure of the letter; and even if the letter was opened contrary to policy/regulations, [Williams] has cited no authority indicating that the appropriate remedy is exclusion of the evidence. That the letter was authored by [Williams] was demonstrated by the circumstances, including the contents of the letter itself. The court stated the reasons for the admission of the letter on the record at the time. There is no reason to reconsider this issue. No new arguments are

made which persuade me that I ought to reconsider the issue.

New Trial Mem. at 2.

Although Williams asserts, rightly so, that the admittance of the letter did cause him certain prejudice, the letter demonstrated an attempt by Williams to solicit action to prevent testimony by Tanya Ross, a key prosecutorial witness. Williams also argues that the contents of the letter "revealed [him] to be guilty of an uncharged crime: attempting to procure, at the very least, a threat against [Tanya] Ross, or at worst, an assault upon her-even killing her" and that this evidence encouraged the jury to punish Williams unfairly by "reasoning that a person capable of committing the uncharged misconduct must also be capable of committing the offenses on trial." Pet'r Mem. at 27–28.[2] It is possible that the admission of the letter had prejudicial effect. This Court cannot, however, say that this evidence rendered a fair trial impossible and deprived Williams of his rights to due process, much less that the Massachusetts Appeals Court's federal due process analysis was contrary to or involved an unreasonable application of clearly established federal law.

Williams' final assertion is that even if admission of the letter, standing alone, did not cause him sufficient prejudice to violate his rights to due process, the "misuse" of the evidence by the prosecution did so. Pet'r Mem. at 39–40. Specifically, Williams argues that the prosecutions's interpretation of the phrase "blaze for me" as "shoot for me" was incorrect and so inflammatory that it, in and of itself, violated his rights to due process. *Id.* at 40.

■ Under the federal due process analysis, even when the "prosecutor's remarks [a]re undesirable or even universally condemned," this Court may grant Williams' petition only if the "prosecutor's comments so infected the trial with [un-]fairness as to make the resulting conviction a denial of due process." *Simpson v. Spencer,* 372 F.Supp.2d 140, 153 (D.Mass. 2005) (Lindsay, J.) (quoting *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)) (internal quotation marks and citations omitted).

■ The Massachusetts Appeals Court implicitly considered and rejected the argument Williams proffered above:

> Finally, assuming without deciding that the prosecutor's statement during closing argument in which he urged the jury to construe the phrase in the letter "blaze for me" as meaning "shoot for me," we see no substantial risk of a miscarriage of justice. The statement was brief, the judge instructed the jury that closing arguments were not evidence, and as set out [above] the jury acquitted [Williams] on two of the charges before them, notwithstanding the contents of the letter. (citations omitted).

*Williams,* 2005 WL 955049, at *2. This Court cannot say that the Massachusetts Appeals Court's opinion resulted in a decision that was contrary to or involved an unreasonable application of federal due process law.

---

**2.** Justice Brady removed those portions of the letter that demonstrated Williams' gang associations, the nature of the probationary proceedings, and the references to marijuana and Kevlar. Trial Tr. 2:88–91, 3:239–258. No limiting instruction with respect to the letter was given to the jury because no such instruction was requested by counsel, even though Justice Brady indicated that in the absence of such an instruction the prosecution could argue the significance of the letter. *See id.* 4:93–95.

## V. CONCLUSION

Accordingly, Williams' Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. section 2254 [Doc. No. 3] is DENIED.

SO ORDERED.